## SNYDER v. RILEY.

The endorsee of over-due paper takes it exclusively on the credit of the endorser, and subject, even without proof of *mala fides*, to all the intrinsic considerations that would affect it between the original parties.; but where the time of transfer is not admitted, and there is not, as there seldom can be, direct evidence of it, the principle which raises a presumption of consideration for the transfer, raises a presumption also that it was made in the usual course of commercial business, and consequently before the day of payment.

A contract of endorsement without date and without witnesses, as it usually is, is so

peculiarly susceptible of fraudulent practice upon the drawer, by precluding, perhaps, a just defence on original grounds that the presumption of fairness primarily applicable to it is not only of the slightest grounds, but open to be blown away by the slightest breath of suspicion; it ought, therefore, to appear, that there are no unusual circumstances connected with the transaction; for every thing which does not naturally fall in with the current of mercantile dealing, is ground of suspicion.

In a suit upon a note by the endorsee, against the drawer thereof, if the evidence raise a suspicion to the extent of a *prima facie* case, the defendant may compel the plaintiff to show *when*, and *how*, he became the holder.

Where, therefore, in an action upon a note by the endorsee against the drawer thereof, evidence was offered, but rejected by the court, to prove that the defendant had publicly repudiated the note, which was not put in suit until after the lapse of three years from the day it became due; that payment was not demanded at the place where the note was made payable; that the plaintiff refused to permit the defendant to inspect his books; and that it did not appear that the note was protested, as is usual in such cases, nor notice of dishonour given to charge the endorser: *it was held*, that all, or any of these circumstances, proved or conceded, would be sufficient to cast the burden of proving *the time and consideration* of the transfer on the plaintiff, and so let in the evidence of want of consideration between the original parties.

In error from the Court of Common Pleas of Union county.

*July* 6. This was an amicable action in debt, entered to January Term, 1843, on a promissory note, dated May 24, 1839, drawn and given by Henry W. Snyder to Israel Kinsman, and by him endorsed, and delivered to Joseph S. Riley; and in which, Joseph S. Riley, endorsee of Israel Kinsman, was plaintiff, and Henry W. Snyder, the plaintiff in error, was defendant. The defendant pleaded payment, with leave, &c.

On the trial before WILSON, P. J., the plaintiff gave in evidence the note which was in the following words:

" $840.                           *"Philadelphia, 24th May,* 1839.

" Five months after date, I promise to pay to the order of J. Kinsman, at the Bank of Northumberland, eight hundred and forty dollars, without defalcation, for value received.

    (Signed,)                              H. W. SNYDER."

It was proved that the endorsement on the note was in the handwriting of Israel Kinsman; and that the note with the name of J. Kinsman endorsed thereon, was in the possession of Joseph S. Riley, the endorsee, and plaintiff. The endorsement, as is usual, was without date, and without witnesses. It did not appear that payment of the note was demanded at the Bank of Northumberland; nor that the note was protested, or notice of dishonour given to charge the endorser.

The defendant under the plea of payment, with leave, &c., and notice of special matter, regularly given to the plaintiff, offered to prove by the depositions, regularly taken, of Samuel Kimber, Dr.

Samuel S. Jackson, Richard Bingham, and Antes Snyder, that the consideration of the note on which this amicable action was instituted, had entirely failed; that the said note was given for a part of the price of a large number of *morus multicaulis* trees, purchased by him of Israel Kinsman, the payee in the said note; that the said Kinsman, on receiving, at the time of the purchase of the said trees, part payment, warranted, as was his practice, that the said trees and every bud thereon would grow; that the defendant, at the time of the purchase, paid said Kinsman six hundred dollars on account; that at the time of the purchase as aforesaid, the trees were worthless and unfit for cultivation, and that although they were carefully and properly planted and attended to by the defendant, they did not grow. To the evidence thus offered by the defendant, the plaintiff objected. The court sustained the objection, rejected the evidence, and sealed a bill of exception. The defendant also notified the plaintiff that he would be required to prove when, and for what, the said note was transferred to him by Kinsman, alleging that the transfer was made after the note became due, and without consideration. He also notified the plaintiff to produce on the trial his books of accounts and papers in relation to the dealings between himself and Kinsman, which the plaintiff refused to do.

The court below (WILSON, P. J.) directed the jury to find a verdict for the plaintiff, for the amount appearing to be due on the face of the note. To this direction the defendant excepted, and requested the court to file their opinion. The jury found, as directed by the court; whereupon the defendant sued out this writ of error, and assigned the following errors here:

1. The court erred in rejecting the depositions of Samuel Kimber, Antes Snyder, Richard Bingham, and the cross-examination of Dr. Samuel Jackson, in his deposition, and rejecting evidence that plaintiff refused to have his books of accounts between him and Kinsman inspected, or to produce said books.

2. The court erred in directing the jury to find a verdict for the plaintiff.

*Bellas*, for plaintiff in error.—No difficulty by endorsee to prove when and how he got possession of the note; but great and insuperable difficulty on the part of the maker, to show, by clear proof, the time of the transfer.

Plaintiff must prove he holds the note *bona fide :* Beltzhoover *v.* Blackstock, 3 Watts, 20, 25, 26. On proof that the note was pro-

cured by fraud, plaintiff must prove he is a *bonâ fide* holder, if notice be given to that effect: Knight *v.* Pugh, 4 Watts & Serg. 445. If endorser prove that the note was put in circulation by the drawer fraudulently, the holder must show how it came into his hands: Holmes *v.* Karsper, 5 Binn. 469. Plaintiff cannot be called upon to prove consideration, unless it be shown that the note was obtained or put into circulation by fraud, or undue means: Brown *v.* Street, 6 Watts & Serg. 221.

If Riley got the note after it was due, the defence was a good one. If Snyder proved fraud in Kinsman, in procuring the note, and gave notice to Riley to prove what he gave, he is bound to do so. Where a note is made payable, in the body of it, at a certain place, it must be presented there for payment: 1 New York Dig. 172; Ogden *v.* Dobbin, 2 Hall, 112; Chit. on Bills, 321; Brittain *v.* Doylestown Bank, 5 Watts & Serg. 87; Kent's Com. 95, 97; Rham *v.* Philadelphia Bank, 1 Rawle, 335.

*Miller* and *Hegins*, contrà.—The court below were right in rejecting the depositions, as they only tended to prove failure of consideration and declarations of Israel Kinsman, the endorser, after he parted with the note; that there was no evidence offered to show that the note was passed to Riley, after it became due, or that the endorsee knew that the consideration, as between the endorser and defendant, had failed. That the presumption of law was, that it was passed before maturity, and in the usual course of business, and cited Zeigler *v.* Gray, 12 Serg. & Rawle, 42; Weidner *v.* Schweigart, 9 Serg. & Rawle, 385; Hughes *v.* Wheeler, 8 Cow. 97; Jerome *v.* Whitney, 7 Johns. Rep. 321; Jackson *v.* Alexander, 3 Johns. Rep. 490; Cringer *v.* Armstrong, 3 Johns. Ca. 5.

That a note payable without defalcation cannot be inquired into, in an action by a *bonâ fide* holder: Lewis *v.* Reeder, 9 Serg. & Rawle, 193; 2 Penna. Rep. 248; Milne *v.* Hamilton, 3 Whart. 284; Bullock *v.* Wilcox, 7 Watts, 328.

Nor is it sufficient to let the drawer into a defence, that the note was endorsed over for antecedent debt: Walker *v.* Geisse, 4 Whart. 252.

The defendant might have examined Israel Kinsman, as a witness, and on that point cited Chit. on Bills, last ed. 663, 666, and 669, note 1; Pacock *v.* Billing, 2 Bing. 469; 9 Eng. Com. Law Rep. 409; Barough *v.* White, 4 Barn. & Cress. 319; Beauchamp *v.* Parry, 4 Barn. & Adol. 89; Reid *v.* Geoghegan, 1 Miles, 204; Beard *v.* Cochran, 4 Serg. & Rawle, 399.

That no presumption can be made against plaintiff because he did not produce his books referred to in the notice, as defendant had his remedy under the act of 1798.

*July* 12.   GIBSON, C. J.—It has been for some time settled, though it was at one time more than doubted, that an endorsee of over-due paper takes it exclusively on the credit of the endorser, and subject, even without proof of *mala fides*, to all intrinsic considerations that would affect it between the original parties; but where the time of the transfer is not admitted, and there is not, as there seldom can be, direct evidence of it, how is it to be established?   The principle which raises a presumption of consideration for the transfer, raises a presumption, also, that it was made in the usual course of commercial business, and, consequently, before the day of payment; for, as Lord Ellenborough said, in Tinson *v.* Francis, 1 Camp. 19, "after a bill or note is due, it comes disgraced to the endorsee, and it is his duty to make inquiries concerning it, if he takes it."   But the contract of endorsement, being without date and without witnesses, is so peculiarly susceptible of fraudulent practice upon the drawer, by precluding, perhaps, a just defence on original grounds, that the presumption of fairness primarily applicable to it is not only of the slightest kind, but open to be blown away by the slightest breath of suspicion.   How easy it may have been for the payee, in this instance, knowing, perhaps, that he could not recover in his own name, to slip the note into the hands of an endorsee at the end of three years; and how tempting to the latter would be the opportunity thus to receive payment of a desperate debt, may be readily conceived.   There must be many such temptations in commercial affairs ; and before a holder can fold his arms, and take his stand on the basis of the presumption, it surely ought to appear that there are no unusual circumstances connected with the transaction; for every thing which does not naturally fall in with the current of mercantile dealing, is ground of suspicion.   And yet, strange to say, I have seen no case, in which the *onus probandi* was actually shifted by the force of circumstances; for Lewis *v.* Parker, 4 Adol. & Ellis, 838, which is the only one in which the point was touched, turned on the form of the issue.   The defendant had pleaded that the bill was endorsed after it was due, and it was determined that the burden of proving the affirmative was upon him; but what evidence of fraud or suspicion was necessary to shift it, was not determined. Of a kindred character, is Low *v.* Burrows, 2 Adol. & Ellis, 483,

in which Lord Denman said: "As to the evidence, unless suspicion had been raised to the extent of a *prima facie* case, there was no answer to the action." But it is agreed on all hands, that when such a case has been actually made, the defendant may make the plaintiff show when and how he became the holder. Were there not circumstances to make out such a case in the instance before us? In the first place, the plaintiff's demand, if an honest, was a stale, one—a most suspicious circumstance in a case of commercial credit which is founded on peculiar and exact punctuality of payment. Though the defendant had publicly repudiated the note, it was not put in suit for three years from the day it became due; and if the plaintiff was the holder of it all that time, he ought at least to give some reason for his forbearance. In the next place, payment was not demanded at the bank of Northumberland, at which the note was made payable in the body of it—not only a circumstance of suspicion, but one which, if taken as a distinct and independent point of defence, would have embarrassed the plaintiff very seriously, and perhaps fatally. Again, it does not appear that the note was protested, as is usual in such cases, or notice of dishonour given to charge the endorser; which would have been a measure of prudence if he were not insolvent; and if he were, that would be an additional circumstance. Finally, the plaintiff refused to let the defendant inspect his books, a fact hardly reconcilable to honesty of purpose and fair dealing. All, or any of these circumstances, proved or conceded, would be sufficient to cast the burden of proving the time and consideration of the transfer on the other side, and to let in the evidence of want of consideration between the original parties. It certainly was in the plaintiff's power to show the actual truth; and had he failed to satisfy the jury that he had taken the note for value, and in the regular course of mercantile business, he would have left them to find as if the cause was depending between the drawer and endorser.

Judgment reversed, and a *venire facias de novo* awarded.